UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IVELISSE CASTRO,

        Plaintiff,

v.                                                    Case No.  6:20-cv-972-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claims for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  For the reasons set forth herein, the Commissioner's decision is affirmed.

### I.    Procedural Background

Plaintiff filed applications for DIB and SSI (Tr. 270-276, 277-283).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 59-81, 82-117).  Plaintiff then requested an administrative hearing (Tr.157, 163-164).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 39-49).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 15-38).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-8). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1980, claimed disability beginning March 4, 2014 (Tr. 313). Plaintiff attended four years of college (Tr. 318). Plaintiff's past relevant work experience included work as a social worker for the Puerto Rico Department of Children and Families from 2004-2014 (Tr. 327). Plaintiff alleged disability due to depression, fibromyalgia, anxiety, insomnia, panic attacks, and asthma (Tr. 317).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2020 and had not engaged in substantial gainful activity since March 4, 2014, the alleged onset date (Tr. 24). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder with panic attacks, fibromyalgia, and migraine headaches (Tr. 24). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work (Tr. 26-27). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the

symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 27).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 30). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a routing clerk, marking clerk, or cleaner (Tr. 31). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 32).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R.

§§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.

4

*Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.    Analysis

Plaintiff asserts the ALJ erred at step five by relying on the VE's responses to an incomplete hypothetical that did not address her "inability to speak or read English" (Doc. 30, p.15). She also argues that the ALJ erred by failing to properly assess her credibility and subjective complaints. For the following reasons, the ALJ's decision is affirmed.

### A. Inability to speak or read English

Plaintiff's first argument is that the ALJ's hypothetical question to the VE was incomplete because it did not include a limitation on her ability to speak or read English. The ALJ must pose an accurate hypothetical that accounts for all the claimant's impairments. *Wind v. Barnhart,* 133 F. App'x 684, 694 (11th Cir. 2005); *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ's hypothetical must comprehensively

describe the plaintiff's limitations.   *See Pendley*, 767 F.2d at 1563.   The hypothetical,

however, need not include "each and every symptom of the claimant." *Ingram v. Comm'r*

*of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).   Instead, the ALJ must include those

limitations he finds credible. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ

is not required to include limitations found not credible in hypothetical to VE and submits

to the expert only those supported by objective evidence of record).

> Here, the ALJ posed the following hypothetical question to the VE:

> [A]ssume a hypothetical individual the same age, education and work profile
> as the claimant limited to working at the light exertional level.   Occasionally
> climb ramps and stairs, ladders, ropes, and scaffolds.   Never work at
> unprotected heights and never work with moving mechanical parts.   Limited
> to simple, routine tasks with simple, work-related decisions and no more than
> occasional changes in the work setting.   The individual would have frequent
> interaction with coworkers, supervisors.   No interaction with the public.   The
> individual can also be expected to be off-task 5 percent of the workday in
> addition to normal breaks due to symptoms of the severe impairments.

(Tr. 45-46).   The VE responded that this hypothetical individual could work as a routing

clerk, marking clerk, and cleaner (Tr. 46).

Plaintiff argues this hypothetical did not account for her "illiteracy in English"

(Doc. 30, p.16) and that this error undermines the ALJ's RFC formulation and, by

extension, his step five finding that Plaintiff can perform other work in the national

economy.   The Commissioner acknowledges that at step five the ALJ must categorize a

claimant's educational level as either illiterate, marginal education, limited education, or

high school education and above (*Id.*). *See* 20 C.F.R. §§ 404.1564(b), 416.964(b).   But the

Commissioner maintains the evidence demonstrates Plaintiff is not illiterate, and the ALJ

properly found she "has at least a high school education" and "is able to communicate in English" (Doc. 30, p.19; Tr. 30).

The concept of "illiteracy" is distinct from the inability to communicate in English. *Davila v. Colvin*, case no. 8:12-cv-2334-T-TGW, 2014 WL 495525, at *12 (M.D. Fla. Feb. 5, 2014)*.* Illiteracy is equivalent to "little or no formal schooling" and "means the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). "[The SSA] consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). Case law clarifies that a person is not illiterate if he or she "successfully completed the equivalent of a high school education in [a foreign country], and [ ] understands and can read some English." *Davila,* 2014 WL 495525, at *12.

In contrast, the highest category, "[h]igh school education and above," means "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above." 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4). The regulation applicable at the time of the ALJ's decision explained:

> [T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate *in English* since this ability is often acquired or improved by education.

20 C.F.R. §§ 404.1564(b), 416.964(b) (effective until Apr. 27, 2020) (emphasis added).[2]

---

[2] This subsection was modified to remove the words "in English," effective April 27, 2020, and moved to subsection (c).

Here, the record contains evidence supporting Plaintiff's allegation that she has difficulty reading and writing in English.  Plaintiff indicated on her Disability Report that she cannot speak or understand English and that her preferred language is Spanish (Tr. 316); Plaintiff testified through an interpreter at the administrative hearing; and the SSA corresponded to Plaintiff in Spanish (Tr. 6-7, 18-20, 161-162, 175-177, 182, 184-185, 196-198, 204-206, 227-234, 243, 256-257, 262-263).  And the regulation in force at the time of the ALJ's decision directed the SSA to "ask a [claimant] how long [she] attended school, and whether [she is] able to understand, read, and write *in English*."  20 C.F.R. §§ 404.1564(b)(6), 416.964(b)(6) (effective until Apr. 27, 2020) (emphasis added).  The ALJ did not ask Plaintiff about her language ability during the administrative hearing.

But as the Commissioner points out, the ALJ's hypothetical directed the VE to "assume a hypothetical individual the same age, education and work profile as the claimant," (Tr.  45) and the VE was present during the hearing and observed Plaintiff testifying through an interpreter (Tr. 39-44).  Since the ability to communicate in English is an "education" factor, by directing the VE to assume a person of Plaintiff's education, the ALJ adequately advised the VE to consider job opportunities appropriate for an individual with limited English proficiency.  *See Davila*, 2014 WL 495525, *12 (citing *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 950 (11th Cir. 2006) (hypothetical question need not specify functional illiteracy because ALJ included in hypothetical plaintiff's educational level)).  As in *Davila*, Plaintiff here "has not made any meaningful attempt to show that including illiteracy in the hypothetical question would have changed the testimony of the vocational expert."  *Id*. at *13.

8

More importantly, even assuming the ALJ erred by failing to include in the VE hypothetical Plaintiff's alleged "illiteracy in English," this error is harmless as Plaintiff is still capable of performing the unskilled jobs identified by the VE.  *See Diori v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1991) (remand unnecessary when it would be a waste of judicial resources and would not change the administrative result).  A substantial vocational range of unskilled work exists for younger individuals who are illiterate or unable to communicate in English.  *See* 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00(g).  The regulations specify:

> [T]he primary work functions in the bulk of unskilled work relate to working with things (rather than data or people) and in these work functions at the unskilled level, literacy or the ability to communicate in English has the least significance.

*Id.*

The three unskilled jobs identified by the VE do not require significant English language literacy.[3]  Marking Clerk (DOT 209.587-034) and Cleaner (DOT 323.687-014) are designated as language level one, the lowest of the six language levels set forth in the Dictionary of Occupational Titles ("DOT"), and Routing Clerk (DOT 222.687-022) is designated as language level two (Tr. 31).  The Eleventh Circuit has held that jobs with a language level of two do "not require that the claimant's language be English."  *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 740 (11th Cir. July 13, 2018).

---

[3]  The Court notes that Plaintiff was represented at the administrative hearing.  Her attorney did not ask the VE whether Plaintiff would be unable to perform the jobs identified by the VE due to her alleged inability to read or write in English, despite ample opportunity to do so (Tr. 47-49).

Interestingly, while the regulation applicable at the time of the ALJ's decision required the ALJ to consider a claimant's English abilities as an aspect of the vocational factor of education, the revised regulation, effective April 27, 2020 (after the ALJ's decision), does not.  20 C.F.R. §§ 404.1564, 416.964.  In revising this regulation, the SSA emphasized the "inability to communicate in English" was "no longer a useful indicator of an individual's educational attainment or of the vocational impact of an individual's education because of changes in the national workforce since [the SSA] adopted the [ ] rule 40 years ago." 85 Fed. Reg. 10586-01, n.95 (SSA, Feb. 25, 2020), 2020 WL 885690 ("Removing Inability to Communicate in English as an Education Category").   And the SSA "will apply the final rule to new applications filed on or after the effective date, and to claims that are pending on and after the effective date." *Id.* at n.95.  Under the revised regulation, the SSA "will not consider whether an individual attained his or her education in another country or whether the individual lacks English proficiency."  SSR 20-1p, 2020 WL 1083309 (Mar. 9, 2020) ("[m]ost individuals learn to read and write at least a simple message by the time they complete fourth grade, regardless of whether the schooling occurred in the United States or in another country").

For these reasons, the Court finds that even if the ALJ erred in failing to include Plaintiff's alleged inability to speak or read English in the VE hypothetical, the error was harmless because the additional inclusion would not have changed the ultimate findings. *Diorio*, 721 F.2d at 728.

### B. Subjective complaints

Plaintiff's second assertion is that the ALJ erred in evaluating her subjective complaints because he did not articulate specific reasons for discounting her testimony. In contrast, the Commissioner contends the ALJ properly found that Plaintiff's subjective complaints were inconsistent with the evidence of record.

In determining whether a claimant is disabled, the ALJ considers all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once a claimant establishes that her pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F.App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints. The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating

factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings.  20 C.F.R. § 416.929(c)(2).  "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received.  *See* 20 C.F.R. § 416.929(c)(3). In the end, subjective complaint evaluations are the province of the ALJ.  *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).  But if an ALJ rejects a claimant's subjective testimony, he must articulate explicit and adequate reasons for her decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation and citation omitted).[4]

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

---

[4] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms.  The SSA eliminated the use of the term "credibility" from its sub-regulatory policy, as the Regulations do not use this term.  SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017).  This change "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id*.  Because the parties use the terms "credibility" and "subjective complaints" interchangeably in their memorandum, however, the Court utilizes both terms.

(Tr. 27).  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted* 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013).

Here, the Court finds that it is.  Regarding Plaintiff's pain associated with her fibromyalgia and migraines, the ALJ noted her normal nerve conduction studies, conservative treatment with medication, normal exam findings regarding gait and strength, normal lab results (including a normal rheumatoid factor), and normal, head, neck, and spine MRIs and CTs (Tr. 28, 462, 504, 506-08, 511-16).  To account for Plaintiff's pain, occasional paresthesia, and upper extremity weakness, the ALJ formulated an RFC for a restricted range of light exertional level work, a finding Plaintiff does not challenge (Tr. 28).

Regarding Plaintiff's major depressive disorder and general anxiety disorder, the ALJ stated Plaintiff "was noted to be doing well" when compliant with her medication (Tr. 28).  The ALJ cited records from Plaintiff's treating psychiatrist indicating she "feels better" on medication (Tr. 526) and "is stable on current medications." (Tr. 651).  The ALJ accounted for Plaintiff's anxiety and depression by limiting her to simple, routine tasks with simple work-related decisions, no more than occasional changes in her routine work setting, infrequent interaction with coworkers and supervisors, no interaction with the public, and off-task five percent of the workday in addition to normal breaks (Tr. 29).

Plaintiff cites to case law regarding the Eleventh Circuit's pain standard but fails to cite any specific evidence undermining the ALJ's decision to discount her subjective pain

13

complaints.   Considering this, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard.  *See Holt*, 921 F.2d at 1221.  The ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective pain complaints.  *Foote*, 67 F.3d at 1561-62.  To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot.  If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion.  *See Bloodsworth*, 703 F.2d at 1239.  On this record, the ALJ did not err in considering Plaintiff's subjective complaints.[5]

## V.   Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

---

[5] The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*  In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**ORDERED** in Tampa, Florida, on this 29th day of September 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE